The Chancellor.
In this case, the bill charges, that the complainants are the children of James E. Mullany, one of the defendants, by his late wife, Maria Mullany, deceased, who was the daughter of Elias Berger, late of the county of Bergen, deceased. That on the first of March, eighteen hundred and sixteen, the said Elias Berger made his last will and testament, and among other matters devised as follows: “ I give and bequeath unto my daughter Maria, the wife of James E. Mullany, one other equal third part of the whole of the income arising from my estate, real and personal, to be paid to her, and to no one else, punctually, yearly and every year during the term of her natural life; which annual allowance is intended for her use, maintenance and support, and for no other purpose whatever, and is, consequently, not to be subject to the control or disposal of her husband in any respect. Then, immediately after the decease of my wife Mary, they, my aforesaid daughters Jane and Maria, shall be entitled to an equal participation of that equal third part of the income arising from my estate, real and personal, which is hereinbefore set apart for the maintenance and support of my said wife Mary; which my executors are hereby directed to pay unto them respectively, and to no other person or persons whomsoever, yearly and every year, during the term of their natural lives, respectively, for their own use, maintenance and support, and for no other purpose whatever.”
On the sixth of August, eighteen hundred and twenty-three, Elias Berger made a codicil to his will, in the following words :
“ I do give, devise and bequeath unto my daughter Maria, the wife of James E. Mullany, as an equivalent, or to make her equal with her sister Jane, all that certain farm, with the buildings thereon, situate at Bergen Point, in the county of Bergen, *18 and state of New Jersey, now in the occupation and possession of the said James R. Mullany, which lies, «fee., (describing it.) To have and to hold the same unto my said daughter1, Maria, tier heirs and assigns, forever; not in any manner subject to. the sale or disposal of her said husband, in any way, manner or form whatever.”
Elias Berger, the testator, died in October, eighteen hundred and twenty-six, leaving his said will and codicil in force; and Maria Mullany, his daughter, died in October, eighteen hundred and thirty, leaving her husband, James R. Mullany, one of the defendants, and the complainants, her heirs at law, surviving her.
There are other charges in the bill, of which it is not necessary now to take notice, as I understand that upon the demurrer filed, the only question submitted is, whether the defendant, James R. Mullany, is tenant by the curtesy of the premises described in the codicil.
■ The first question which presents itself, refers to the inten tion of the testator; whether he intended by this will to exclude the husband from the curtesy. And in order to arrive at that intention, it is proper to consider the situation of the parties at the time of making the will, and to compare expressions used in the codicil, with expressions upon similar subjects in other parts of the will.
The rule of construction upon this subject is, that as it is against common right, “the instrument under whichit is made must clearly speak the devisor’s intention to bar the husband, else it cannot be allowed:" Clancy, 262.
As to the situation of the parties, it appears by the codicil it self that the defendant, Mullany, was in the occupation and possession of the premises at the time of making the codicil and as it appears by the bill that he wasin possession after tbs death of his wife, I take it for granted that his possession was uninterrupted from the time of making the codicil until after the death of his wife, and that she lived with him. Under these circumstances, it cannot be presumed, unless most clearly ex *19 pressed, tliat the testator intended to change the situation of the parties as to the manner of occupying and enjoying the property, after his death, which he had sanctioned for the last three years of his life, and that after the making of this codicil. Noi .lo I think that the words of this codicil necessarily convey that idea, and particularly when compared with other expressions used in the former part of the will. When bequeathing to Mrs. Mullany the third part of the income of his estate, both real and personal, for her life, he directs it “to be paid to her and to no one else;” and declares it to be “for her use, maintenance and support, and for no other purpose whatever,” and “consequently not to be subject to the control or disposal of her said husband in any respect.” But in the codicil, when devising the farm to her, the only words of limitation or restraint are, that it shall not be “subject to the sale or disposal of her husband in any way, manner or form whatsoever.”
As the defendant, Mullany, was at this time in the quiet and uninterrupted possession of the farm, with his wife and family, and as the testator in this latter devise has used the terms “sale and disposal,” instead of “control and disposal,” used in the former part of the will, I cannot believe- that he intended to exclude him from the use and enjoyment of the farm during the lifetime of his wife, nor to debar him of his rights after her death. But the more reasonable construction appears to me to be, that he intended to make him use and occupy it for the benefit of himself and family, and not to sell or quit it. If he had intended to exclude or debar him from all right or interest in the real estate, it is fairly to be presumed that his terms of exclusion would have been as strong, at least, as those used with regard to the personal estate.
In the case of Wills v. Sayers, 4 Mad. 409, there was a bequest of a sum of money to a feme covert, “for her own use and benefit;” and yet the vice chancellor, sir John Leach, de creed that it was not for her “separate use,” because in the same will there was a bequest to her of other monies “for her sole and separate use.” There the construction given to the former ex *20 pression was evidently controlled by tbe greater particularity of tbe latter.
But if the intention of the testator had been more cleai’ly expressed to debar the defendant, Mullany, from his curtesy, another question arises, How far that intention shall prevail ? In other words, If a man devise to a feme covert an absolute estate of inheritance in fee simple, and annex a condition which is inconsistent with the legal effect of that estate, will that condition be effectual in equity?
Hponthis subject, the correct rule for the construction of wills,, according to my view, is, “that such an estate, which cannot by the rules of common law be conveyed by act executed in his lifetime-by advice of counsel learned in the law, such an estate cannot be devised by the will of a man who is intended in law to be únops censilii:" Corbet's case, 1 Co. 85.
It is true that the intention of parties should be greatly regarded in giving construction to both wills and deeds; but I can see-no reason why a man without the benefit of advice or counsel, should be permitted to convey an estate by will, which he could not do by deed, and with the benefit of counsel; nor can I believe that a court of equity can, consistently, dispense with or disregard those general rules of law upon which our titles depend.
In the case of Long v. Laming, 2 Burr, 1108, lord Mansfield says, “A court of equity is as much bound by positive rules and general maxims concerning property, (though the reason of them may have ceased,) as a court of law; and if the intention-of a testator be contrary to the rules of law, it can no more take place in a court of equity than in a court of law; if the intention be Ilegal, it is equally void in both.” And lord chancellor Cooper, in the case of Watts v. Ball, 1 P. W. 109, decreed “that trust estates were governed by the same rules, and were within the same reason as legal estates, a.nd if husband would be tenant by the curtesy at law, so in equity.” And he adds, “i there were not the same rules of property in all courts, all thing; would be, as it were, at sea, and under the greatest uncertainty..
*21 And the same principle is established in the latter case of Banks v. Sutton, 2 P. W. 632; in which case, after stating the rule, the master of the rolls says, there is no exception to the rule, nor any reason why there should be.
And Maddock, in the first volume of his treatise, page 452, confirms the rule, and states the only difference to be, “ that where a trust estate is created by deed or will, it is determined upon in courts of equity, and where a conveyance or devise is of a legal estate, it is determined on in courts of common law, but the decision in each court in the construction of words of limitation is guided by the same rules.”
If, therefore, courts of equity are as much bound by positive rules and general maxims concerning property, as courts of law, and if the rules of construction are the same in both courts, in order to arrive at the true construction and legal effect ol this will, it is proper to inquire, in the first place, as to the rule in the courts of common law.
The earliest case that I find upon the subject, is that of Sir Anthony Mildway, 6 Co. 41; where, after great discussion, il was resolved, “ That if a man made a gift in tail, on condition that he shall not suffer a common recovery, that condition is repugnant to the the estate tail, and against law. Also if a man made a gift in tail to a feme upon condition that the husband of the tenant in tail after issue shall not be tenant by the curtesy, this condition is void.”
And in a latter case in seventeen hundred and ninety-eight the same doctrine is maintained. I refer to the case of Goodill v. Brigham, 1 Bos. and Pul. 192, where a devise was made to a feme covert in fee, with a declaration in the will, that “ she might give, sell and dispose of the same, as she should think proper, and also give acquittances and other discharges, so as not to be under the control of her own husband, who should not intercede or meddle with any of the estate or effects thereby given to the said feme covert.” It was unanimously ruled, “ that such a power was void, as being inconsistent with the fee given to her in the first instance.”
*22 And in this case I refer to the views of justice Buller, as par ticularly applicable to the present case. He says, “The devisor seems to have had two intentions, which are inconsistent > one was to give an estate in fee to the feme covert, the other to qualify it in such manner as that her husband should have no power over it. The last is contrary to the rules of law : the court will, therefore, carry into effect the first intention, and reject the other.”
From these cases, which have not, to my knowledge, been overruled, I infer that those incidents which by law are inseparably annexed to an estate, cannot be prohibited by any condition or limitation expressed in the deed or will; and that when a man gives a fee simple, he has parted with all the interest which he had, and cannot be permitted to say, that such estate shall not be subject to all the restraints imposed upon it by law.
If this doctrine be correct, the defendant, Mullany, would be entitled to his curtesy in a court of law; and if the rule cited from Corbit’s case be the true rule of construction, he would also be entitled in a court of equity. And upon examining the decisions in courts of equity, I think they will be found to sustain that rule.
There is a class of cases respecting the rights of married women over their separate property, and showing how far they may be considered as unmarried; but these cases apply to personal property, and the rents and profits of real estate during life, which would by law belong to the husband upon marriage.
It will be remarked, that by the will of the testator in this case, the farm is not given to the separate use of the wife during life, but it is given to her in fee; they being at the same time in the use and enjoyment of it; and the only condition or limitation annexed by the will, is, that he shall not sell or dispose of it, in any way, manner or form. I refer to this part of the case to show, that they had an actual seizin, both in fact and in law, could have sold the property and given an absolute, indefeasible title in fee to the purchaser, and the complainants must take by descent and not by purchase. In order to avoid the effect of *23 marriage upon the property of the wife, resort has been had to the intervention of trustees, and courts of equity have declared that where a trust was intended and no trustee named, they would supply the deficiency, so that by operation of lawr trustees were raised up to support and protect the rights of those who were intended to be benefited by a devise or gift.
And if the complainants can prevail in this case, it must be upon the idea that, under this devise the husband became trustee for his wife during her life, and now for the complainants, who are her heirs at law. But it will be remarked, that if it be so, it must be a trust executed ; for the testator certainly did not contemplate any further conveyance to perfect the title, and there is nothing for this court to do, in that respect, nor is there any thing asked for by the bill, which could give this the character of an executory trust.
In examining the decisions of courts of equity upon the subject, the strongest case for the complainants which I find, is that of Bennet v. Davis, 2 P. W. 316, where a devise of lands in fee was made to a married woman, for her separate and peculiar use, exclusive of the husband, “ to hold the same to her and her heirs, and that her husband should not be tenant by the curtesy, nor have those lands in case he survived the wife, but that they should, upon the wife’s death, go to the heirs.” In this case the master of the rolls said it was a trust in the husband, created by the act of law and decreed that he should join in a conveyance to a trustee, for the separate use of his wife, &c. But it is to be remarked that the question arose in the life time of the wife, between her and the creditors of her husband, who had become a bankrupt, and although the court might with great propriety protect the property against the creditors of her bankrupt husband, (which is the point of the case,) it does not follow that he would have been barred of his curtesy. It is true that the master of the rolls, in delivering his opinion, remarks that “ Although the husband might be tenant by the curtesy, yet he should be but a trustee for the heirs of the wife.” But this is an expression not called for by the case, and therefore not entitled to much weight, *24 and the operation and effect of the case should he limited to the point decided.
In the case of Darley v. Darley, 3 Atk. 399, which was determined a few years later, lord Hardwicke said, that where an estate is given to a husband for the use of the wife, he may be considered as a trustee for her separate use. I refer to this case because it was cited by the counsel for the complainants, but it appears to me to have no bearing upon the present case, as it applied to personal property, and the point decided was, that a father cannot apply a legacy left to a child to the maintenance of that child.
I proceed to examine those cases in equity which satisfy me that the same rules of construction should apply in courts of law and equity, and that although the intention of a testator is much regarded in courts of equity, yet that intention will not be carried out, even in those courts, if it is contrary to law.
The first case that I find upon this subject, applicable to the present, is that of Leonard v. Sussex, 2 Vern. 526. In that case a devise was made to trustees to convey to A. and B. and the heirs of their bodies, provided that it should not be in their power to dock the entail during their life. Decreed that they must be made only tenants for life and not have an estate tail conveyed to them, because the estate is not executed, but executory, and therefore the intent and meaning of the testatrix is to be pursued. But the court remark, “ Had she by her will devised to her sons an estate tail, the law must have taken place, and they have barred their issue, notwithstanding any subsequent clause or declaration in the will that they should not have power to dock the entail.” This case establishes the principle that the intention of a testator cannot prevail against the rules of law.
And five years after, lord chancellor Cowper, in Harvey v. Harvey, 1 P. W. 126, doubted the power of devising real estate to the wife’s separate use at all, because it was repugnant. And lord chancellor Talbot, in the case of Atkinson v. Hutchinson, 3 P. W. 259, admitted that the devise of a trust must have the same construction as that of a legal estate ; and further stated, that, *25 “though the intention of the testator is greatly to be regarded, yet that his intention must ever be consistent with the rules of law.”
The case of Roberts v. Dixwell, 1 Atk. 607, decided in seventeen hundred and thirty-eight, appears to me to have a strong bearing upon the question. The testator in that case directs her trustees to convey freehold lands to the feme covert during his life, so that she alone, or such person as she should appoint, should take and receive the rents and profits thereof, and so as her husband is not to intermeddle therewith. The question was, whether this was a trust executed or executory; for if executed, then feme was tenant in tail and husband would have his curtesy, but otherwise if executory. Lord Hardwicke was of the opinion, that conveying an estate tail would defeat the intention of the testator; and he remarks, “that if the wife had been entitled to an estate tail, I do not see but the husband must have been tenant by the curtesy.” And as to the question whether the devise to her separate use will bar the husband, he says, “I am. of opinion it will not, because here is a sort of seizin in the wife.” This case sustains the rule, that the intention must be in conformity with the rules of law, and at the same time points out the distinction between executory and executed trusts. And the case of Hearle v. Greenbank, 3 Atk. 695, decided by the same chancellor eleven years later, establishes the same principle, although in some points the opinion of the chancellor in the two last cases appears to have varied.
But the subject was again brought before lord chancellor Talbot a few years after, in the case of Lord Glenorchy v. Bosville, Tal. Eq. 19, when the court expressly declared, that where an express estate tail is devised, the annexing a power inconsistent with it will not defeat the estate, but the power shall be void; and the lord chancellor remarks, “ That in cases of trusts executed or immediate devises, the construction of the courts of law and equity ought to be the same, for there the testator does not suppose any other conveyance will be made. But in executory trusts he leaves something to be done; the trusts to be executed m a more careful and more accurate manner.”
*26 And in the case of Austin v. Taylor, Amb. 376, the lord keeper was of opinion, that in the case of imperfect trusts only the court could make a different construction from a legal limitation. In that case he said, “there was no reference to the-trustees; without that ingredient he did not find any case where the court had given a different meaning from what a court of law would on a legal limitation;”
But the case of Morgan v. Morgan, reported in 5 Mad. 408, is a strong case in support of the view I have taken, and has a striking resemblance to the principal case. It was a case between the father who claimed as tenant by the curtesy, and the son who claimed as heir at law to his mother. The lands in question had been the estate of the mother, and previous to her marriage were conveyed to trustees upon trust, “for the sole and separate use of the (wife) mother for life, with power to the mother to appoint the fee by deed or will, and for want of appointment-in trust for the mother, her heirs and assigns.”
The mother died without having made an appointment, leaving her husband and son; of course she took an equitable estate of inheritance. After an argument where all the leading cases upon the subject were cited, the vice chancellor, sir John Leach, decided that the husband was entitled to his curtesy, and observed, “that at law, the husband is entitled to the curtesy, whenever the wife, during the coverture, is seized of an estate of inheritance, and has issue by the husband capable of that inheritance, and that equity follows the law in the quality of estates.”
The vice chancellor also alludes to the cases of Hearle v. Greenbank and Roberts v. Dixwell, and. remarks, “that as die opinion of lord Hardwicke in those two cases cannot be reionciled, he has recourse to principle and analogy.”
He also distinguishes the case of Bennett v. Davis from that of Morgan v. Morgan, by stating, “that in the latter case the ausband is partially and not wholly excluded from the enjoyment of the wife’s propertyand remarks, “that the court would have restrained him from all interference with the.rents *27 and profits during the life of the wife, but there being no further exclusion expressed in the settlement, the court can have no authority to restrain him from the enj oyment of his general right as tenant by the curtesy in the equitable inheritance of the wife.”
These latter remarks apply with equal force to the case before the court, for the words used in the settlement in the one case, are the same as those used in the will in the other.
I find the same doctrine sanctioned by the authority of Mr. Clancy, in his treatise on the rights of women. In page 282, he says, “ that if an estate of freehold be limited to trustees for the sole and separate use of a married woman and her heirs, although such a limitation would entitle her to the rents and profits during the marriage,and would enable her to dispose of them as she thought fit, yet she could not, without the concurrence of her husband, dispose of the reversion, nor could she bar him of his tenancy by the curtesy, if the estate were of inheritance.”
This same subject has recently passed under the scrutinizing eye of our late chancellor Williamson, in the case of Gibbons v. Trumbull; and if, in that case, I could find anything conflicting with the views I have taken of this, I should have paused before adopting those views; but I am sustained by that case, as far as it is applicable to this.
When treating of the right of Mr. Trumbull as tenant by the curtesy, he remarks, “ that at law, to entitle the husband to be tenant by the curtesy, marriage, seizin of the wife, issue, and death of the wife, are necessary requisites; and the construction of trusts being the same in equity as that of legal estate in courts of law, therefore, to entitle the husband to be tenant by the curtesy of a trust estate, there must be the same requisites.” And he decides against the claim of the husband expressly upon the ground of want of seizin.
Erom a review of all the cases, I conclude that a court of equity is as much bound by positive rules and general maxims concerning property, as a court of law.
That in giving construction to a devise, the intention of the testator shall be regarded,unlessitbecontraryto the rules of law, *28 in which case it should be considered void, as well in a court of equity as of law.
That in cases of trusts executed, or immediate devises, where the trusts are directly and wholly declared by the testator to attach on the lands immediately under the will itself, the construction of the courts of law and equity should be the same.
But in cases of executory or imperfect trusts, which are only directory, or prescribe the intended limitations of some future conveyance, courts of equity in striving to ascertain the intention of testators, have not adhered so strictly to the rules of construction adopted by the courts of law, but have directed those conveyances to be made in such manner as to carry out the intention of the testators, as ascertained from an examination of the whole will.
And that a man cannot by will create such an estate, as by the rules of the common law he could not, in his lifetime, create by deed.
And I adopt these conclusions, not only because they appear to me to be fairly drawn from the cases, but because they are m conformity with the dictates of my own judgment.
And as Mrs. Mullany was seized of an estate of inheritance in the premises in dispute during the coverture, and had issue capable of inheriting, and who now claim the inheritance, I am of opinion that at her death Mr. Mullany became tenant by the curtesy of those premises, notwithstanding the words of restraint or limitation in the will, under which she derived her title.